IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL LEE STROPE,

        Plaintiff,

                                CIVIL ACTION
   vs.                         No. 04-3338-SAC

WILLIAM CUMMINGS, et al.,


        Defendants.


ORDER

    This matter is before the court on a civil rights action filed pursuant to 42 U.S.C. 1983 by a prisoner in state custody.  Plaintiff proceeds pro se and submitted the full filing fee.

    The court has examined the complaint and enters the following findings and order.

Discussion

**Standards of review**

    A complaint filed by a party proceeding pro se must be given a liberal construction.  See Haines v. Kerner, 404 U.S. 519, 520 (1972)(per curiam).  However, the court "will not supply additional factual allegations to round out a plain-

tiff's complaint or construct a legal theory on a plaintiff's behalf". <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  A complaint may be dismissed upon initial review if the claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who

is immune from such relief.  28 U.S.C. 1915A.

The Prison Litigation Reform Act of 1996 amended 42 U.S.C. 1997e(a) to provide that "[N]o action shall be brought with respect to prison conditions under ... any ... Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In the Tenth Circuit, the plaintiff has the burden of pleading exhaustion of administrative remedies, and "a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1211 (10th Cir. 2003).

It also is settled in the Tenth Circuit that the Prison Litigation Reform Act requires a prisoner to exhaust all

2

claims through the available administrative grievances, and "the presence of unexhausted claims in [a prisoner's] complaint require[s] the district court to dismiss his action in its entirety without prejudice." <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1189 (10th Cir. 2004).

However, where a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary damages from a defendant who is immune from that relief, the court may dismiss the claim notwithstanding a failure to exhaust administrative remedies. 42 U.S.C. 1997e(c)(2).

**Application**

The original complaint contains 17 claims of constitutional violations.  The facts of each claim and the court's analysis appear together.

**Count 1** (Doc. 1, p. 14): Plaintiff asserts defendant William Cummings violated his right under the First Amendment to petition the government for redress of grievances by seizing grievances filed between June and July 2004.  Plaintiff alleges that "Cummings would either return the grievances or send an incompetent letter that proper procedures were not being followed!" (Doc. 1, p. 14.)

3

Plaintiff supports his claim with reference to Exhibit 2, which is a grievance addressed to the Secretary of Corrections dated March 27, 2004.  The court has not found a response to that grievance in the record.

Prisoners do not have a constitutional right to a grievance procedure. <u>Ashann-Ra v. Com. of Va.</u>, 112 F.Supp. 2d 559, 569 (W.D. Va. 2000)(citing <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994) and <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991)).  While a prisoner is required to exhaust available administrative remedies before beginning a federal lawsuit concerning conditions of confinement, 42 U.S.C. 1997e(a), it is recognized in the Tenth Circuit that a prison official's failure to respond to a grievance within the applicable time limits renders an administrative remedy unavailable. <u>Jernigan v. Stuchell</u>, 304 F.3d 1030, 1033 (10th Cir. 2002).  Therefore, the alleged failure of Cummings to respond to every grievance did not impair plaintiff's constitutional right of access to the courts, and Count 1 is dismissed for failure to state a claim upon which relief may be granted.

**Count 2** (Doc. 1, pp. 14-17): Plaintiff alleges defendant Cummings violated his right to equal protection by failing to take action on various conditions of confinement which

4

plaintiff alleges were retaliatory.  Plaintiff specifically
alleges defendant Cummings refused to prevent a corrections
officer from retaliating against him for filing complaints
about her, that he refused to enforce the policy allowing
prisoners 20 minutes to consume their meals, refused to order
the food service provider to provide adequate Kosher meals and
to prepare them properly, and refused to correct "many on-
going unsanitary, and unlawful practices and operations" (Doc.
1, p.15).  Plaintiff also alleges that defendant Cummings
conspired with a number of other individuals to deny him a
balanced diet and access to a monthly take-out meal available
for purchase by prisoners and to hinder investigations of his
grievances.  He also alleges interference with his mail.

    In support of these claims, plaintiff references a
grievance response prepared by defendant Cummings in which he
found "no evidence that ... prison officials have prevented
Strope from practicing the tenets of his religion.... no
evidence of discrimination." (Doc. 1, Ex. 20).

    The court first finds plaintiff has failed to make more
than vague allegations of conspiracy by defendant Cummings and
others.  Such assertions are insufficient to show a conspiracy
by the requisite agreement and concerted action.  See Durre v.

Dempsey, 869 F.2d 543, 545 (10th Cir. 1989)("[c]onclusory allegations of conspiracy are insufficient to state a valid 1983 claim.")

Next, the plaintiff's assertions that defendant Cummings refused or failed to take corrective action may be challenges to the resolution of plaintiff's grievances. However, the plaintiff's claims do not identify any specific events which reasonably suggest that defendant Cummings failed to abate unconstitutional conditions of confinement. Instead, it appears defendant Cummings reviewed and responded to plaintiff's frequent grievances, and that the majority of his claims were either unsubstantiated or found to be without merit.

The Supreme Court has stated that the federal courts should afford deference to state officials charged with managing correctional facilities, see Sandin v. Conner, 515 U.S. 472, 482-83 (1995), and the plaintiff's claim against defendant Cummings, namely, that he failed to enforce corrective action, is sufficiently vague that the court determines that no response is warranted.

**Count 3** (Doc. 1, p. 17): Plaintiff alleges defendant Cummings violated his rights under the First and Fourteenth Amendments

6

"by harassing...retaliating...and trying to deter...right of access to the courts....Cummings has denied relief on every complaint plaintiff has filed since March 19, 2004, has failed to take corrective issues over many acts of unlawful practices already quoted herein, and has conspired with already named defendants herein...."

This claim must be dismissed due to plaintiff's failure to identify with specificity any act by defendant Cummings which violated plaintiff's protected rights and resulted in injury.  See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992) (despite the need to afford liberal construction to pro se complaints, a court "should dismiss claims which are supported only by vague and conclusory allegations.")

**Count 4** (Doc. 1, pp. 18-19): Plaintiff alleges defendant McKune violated his First Amendment right "by retaliating ... for filing complaints... and by conspiring with his co-workers to inflict many sanctions" id. at p. 18; he claims special diet inmates were given inadequate time to eat, that defendant "McKune would lie to the governor, because he is a heathen", id., and that defendant McKune conspired with others to deny plaintiff access to his mail, failed to take corrective action, and failed to adequately investigate plaintiff's

7

grievances.    Like   plaintiff's   claims   against   defendant
Cummings,  his  claims  against  defendant  McKune  suffer  from
vagueness, and he fails to identify either any clear violation
of his rights or any specific injury beyond inconvenience or
frustration.    Finally,   plaintiff's   characterization   of
defendant  McKune  is  malicious.    The  claims  in  this  count
therefore  will  be  dismissed.   See  Northington,  973  F.2d  at
1521,  28  U.S.C.  1915A(b)(1)(allowing  summary  dismissal  of
malicious claims).[1]

**Count 5** (Doc. 1, pp. 19-20): Plaintiff alleges defendant
McKune violated his right to equal protection by denying him
adequate time to eat his meals.   Plaintiff contends this is
"an ongoing attempt to run plaintiff back on regular line to
cut costs", id., p. 19.   Plaintiff also alleges that he has
received "partial non-Kosher items", id., p. 20, that defen-
dant McKune has failed to timely process complaints, has
selectively enforced prison rules, policy, and statutes, and
that he has engaged in religious persecution by restricting

---

[1]

Such references appear throughout the complaint.   The
court notifies plaintiff that future pleadings in any
action by the plaintiff which contain similar derogatory
references to any party will not be considered by the
court.

those inmates receiving a Kosher diet from the purchase of a monthly take-out meal and from the purchase of certain canteen items.  He repeats his characterization of defendant McKune as a "heathen."  Id., p. 20.

A review of the record shows that plaintiff presented a grievance concerning an incident in May 2004 in which he claims he was allowed approximately nine minutes to eat. (Doc. 1, Ex. 4).  Plaintiff asserted in the grievance that this was an ongoing problem but made no specific allegations. It does not appear that plaintiff has included the response by the Unit Team in the complaint; however, the warden's response noted the facility's general orders provide for a minimum of 20 minutes to eat and that investigation showed that staff provide inmates with adequate time to eat.  Id., p. 2.

While it appears plaintiff may have received only a brief amount of time to consume his meal on at least one occasion, it does not appear that his allegation of discrimination is supported or that the isolated incident may be characterized reasonably as a denial of a religious diet.  See also Robbins v. South, 494 F.Supp. 785, 790 (D. Mont. 1984)(rejecting Eighth Amendment claim based upon 12-15 minutes to eat).

Plaintiff also complains broadly of spoiled food in

9

Kosher meals, that the prison canteen does not stock a large variety of Kosher items, and that inmates receiving a Kosher diet are not allowed to participate in special monthly carry-out meals.

Again, it does not appear the plaintiff has provided the court with copies of grievance responses by the Unit Team or the warden.  However, the response of the Secretary's designee noted that the Unit Team prepared a detailed response.  The Secretary's response also reflects that the Kosher diet is prepared by Aramark, a contract provider, and is approved by both a dietitian and a rabbinical authority and second, that canteen items are determined on a supply and demand basis. (Doc. 1, Ex. 20.)

Having considered the complaint, the court finds the plaintiff's allegations are insufficient to state a claim of religious discrimination.  The failure to allow plaintiff access to a monthly take-out meal available to prisoners who do not adhere to a Kosher diet does not burden plaintiff's free exercise of religion.  Next, the grievance materials attached to the original and amended complaints demonstrate that plaintiff has been advised to seek replacement of any spoiled food items he encounters (Doc. 7, Ex. 43).  The

occasional service of spoiled food does not deny a prisoner's basic nutritional needs and does not present an immediate danger to the health of the prisoner.  Antonelli v. Sheahan, 863 F. Supp. 756, 762 (N.D. Ill. 1994).  Finally, the court takes judicial notice that plaintiff is pursuing claims that his Kosher diet has not been managed properly and that meal time is too brief, among other claims, in Case No. 03-3310, Strope v. McKune.  See Strope v. McKune, 131 Fed. Appx. 123 (10th Cir. 2005)(affirming denial of  temporary injunction on claims alleging lack of sanitation in prison dining hall, inadequate time to eat Kosher meals, and service of spoiled or undercooked food).

**Count 6**.  (Doc. 1, p. 20): Plaintiff alleges defendant McKune subjected him to cruel and unusual punishment by "a repeated series of sanctions inflicted...for being an activist...."  In support, plaintiff claims he has been subjected to conditions which create "an exceptionally violent unsafe, and unsanitary environment to eat meals," (Doc. 1, p. 22), including  the rapid pace of meal service to prisoners, the violent prison environment, lack of sanitation, and inadequate fire safety protection.   The court has reviewed the record and finds no grievances related to the claim of sanctions in response to

11

plaintiff's activism, nor does the record demonstrate that plaintiff has presented his claims concerning violence and fire safety through the administrative grievance procedure.

These unexhausted claims require the court to dismiss the entire complaint. <u>Ross</u>, 365 F.3d at 1189.

**Count 7** (Doc. 1, p. 23): Plaintiff alleges defendant McKune conspired with Aramark officials to violate his rights under the First, Eighth, and Fourteenth Amendments. He claims defendant McKune conspired with unnamed "Aramark officials and officials from Topeka" to delay grievance responses, deny access to meals to prisoners on special diets by denying them adequate time to eat, denying inmates on Kosher diets a holiday meal on Memorial Day and July 4th holiday weekends in 2004, by denying access to fresh produce due to complaints, and by conspiring to repeatedly serve sour milk in July and August 2004.

Plaintiff's bare allegations of conspiracy are insufficient to state a claim for relief. To plead such a claim, a plaintiff must allege specific facts showing an agreement and concerted action among the defendants. <u>Tonkovich v. Kan. Bd. of Regents</u>, 159 F.3d 504, 533 (10th Cir.1998); <u>see also Steele v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1214 (10th Cir.

2003) (holding conclusory allegations of conspiracy insuffi-

cient to state a constitutional claim).

Next, the record does not show that plaintiff presented

his claims of conspiracy through the administrative grievance

procedure.  The presence of an unexhausted claim requires the

court to dismiss the entire complaint.  <u>Ross</u>, 365 F.3d at

1189.

**Count 8** (Doc. 1, p. 24) Plaintiff claims defendant Beck, a

correctional officer, violated his rights under the First and

Fourteenth Amendments "by a disparity of treatment, inten-

tional denial of basic rights ... and then on-going harass-

ment, and retaliation."

The record contains grievance materials showing that on

one occasion, plaintiff did not have access to toilet paper

for a few hours.  Plaintiff also claims that on one occasion,

he was not released on time for a chapel call-out, causing him

to arrive approximately twenty minutes late; this claim is

disputed by defendant Beck's response to the grievance.  These

isolated incidents involving brief deprivations are insuffi-

cient to state a claim for relief.  <u>See</u> <u>Lunsford v. Bennett</u>,

17 F .3d 1574, 1579-580 (7th Cir. 1994) (dismissing claims of

inmates denied toilet paper, hygiene items and cleaning

13

supplies for 24 hours).

**Count 9** (Doc. 1, p. 24): Plaintiff alleges defendant Smith violated his rights under the First and Fourteenth Amendments by conspiring with others to deny him the use of his legal name, by the seizure of mail, and by retaliation for legal activities.   Plaintiff contends this violated his right of access to the court and equal protection.

In response to plaintiff's grievance on this point, Unit Team Manager Duane Muckenthaler wrote the following explanation:

> The main issue in your grievance is you wish to receive mail that has a name other than your conviction name on it.  You also want to be able to send out mail with a name other than your conviction name on it.  You also state that we have unlawfully opened your legal mail.
>
> I believe that if we resolve the first problem, the second problem will also be resolved, since it occurred as a result of you[r] mail being sent back out.  I have attached a copy of your Journal Entry of Change of Name.  Per K.A.R. 44-12-506, in the event of a legal name change, the records may reflect the new name as an alias and the inmate may use the alias name in parentheses after the conviction name.  This would allow your mail to be sent in or sent out with the following:
>
> Gordon Strope #58371 (Michael Strope)
>
> I will copy this for the mail room and attach a copy of your Journal Entry of Change of Name.

14

No further action is deemed necessary at this time.
(Doc. 7, Ex. 22.)

The Warden concurred with that response and noted that pursuant to K.A.R. 4-12-506, in the event of a legal name change, the records may reflect the new name as an alias, but a prisoner shall be identified in all official transactions, including all correspondence, by the name used in the journal entry of conviction. (Doc. 7, Ex. 23.)

The record before the court does not include any specific information concerning the items of mail plaintiff alleges were improperly seized or opened. The court notes, however, that plaintiff did not comply with the provisions cited in submitting the present complaint: instead, plaintiff submitted the complaint in this matter in an envelope bearing the name and DOC number of another prisoner in the return address (Doc. 1, Attach.) If plaintiff submits materials in the future that reflect a failure to comply with state law, the court will direct the clerk of the court to strike such pleadings and will require plaintiff to resubmit them in compliance with state law.

**Count 10** (Doc. 1, p. 25): Plaintiff claims defendant LaRocco violated his rights under the First, Eighth, and Fourteenth

15

Amendments by "operating a kitchen unlawfully".  Plaintiff alleges intentional religious discrimination and persecution, retaliatory and disparate feeding of prisoners receiving a Kosher diet, deprivation of a balanced diet, service of spoiled food items, interference with Passover, the operation of an unsafe, unsanitary kitchen, and failure to provide a holiday meal on Memorial Day to inmates receiving a Kosher diet.

The court finds plaintiff failed to exhaust all of his claims against defendant LaRocco through the administrative grievance procedure.  The grievance filed on June 1, 2004, and apparently refiled on July 14, 2004 (Doc. 1, Ex. 5), addresses only the Memorial Day meal provided to prisoners receiving the regular diet and plaintiff's demand for a comparable meal.

The plaintiff's claim concerning the Memorial Day meal does not present a claim of constitutional dimension. Plaintiff received a Kosher meal on that day, and despite his dissatisfaction with that meal, there is no constitutional requirement that he be provided with a holiday meal.

The plaintiff's failure to fully exhaust administrative grievances on all claims requires the court to dismiss the entire complaint.  <u>Ross</u>, 365 F.3d at 1189.

16

**Count 11** (Doc. 1, p. 30): Plaintiff contends that defendant Dorian violated his rights under the First, Eighth, and Fourteenth Amendments by intentional religious discrimination, retaliatory, disparate treatment, deprivation of a balanced, adequate diet, and by providing a special Memorial Day meal to prisoners receiving a regular diet.

The record contains only a single grievance against defendant Dorian, <u>see</u> Doc. 1, Ex. 5.  That grievance addresses the Memorial Day meal but not the issues of discrimination, disparate treatment, and deprivation of an adequate diet.  As noted elsewhere, the failure to provide inmates receiving a Kosher diet with a special meal on Memorial Day does not violate the Constitution.  Moreover, the failure to fully exhaust all claims through the administrative grievance procedure requires the court to dismiss the entire complaint. <u>Ross</u>, 365 F.3d at 1189.

**Counts 12-15** (Doc. 1, pp. 32-38): Plaintiff alleges defendant Thorne violated his rights under the First Amendment by interference with mail and grievances and by retaliation; by unlawful seizure and confiscation of official and legal mail; by interference with mail; and by denying plaintiff the right to receive mail in his legal name.

It is recognized that "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech", <u>Treff v. Galetka</u>, 74 F.3d 191, 194 (10th Cir. 1996); however, it is axiomatic that the regulation of mail to and from prisoners is integral to responsible prison adminis- tration. <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08 (1989)(prison officials are better able to evaluate security risks in contact between prisoners and others).

Plaintiff's claims concerning the processing of his mail are not facially frivolous, and the court concludes he properly presented these claims through the administrative grievance procedures.

**Count 16** (Doc. 1, p. 38): Plaintiff alleges defendants Cummings, McKune, and Smith violated his First and Fourteenth Amendments by denying him the receipt of books, magazines, and newspapers; by denying him access to the general and law libraries; and by the unlawful seizure of publications without notice.

The court's examination of the record reflects correspondence from William L. Cummings, Corrections Manager, concerning the provisions of K.A.R. 44-12-601(q), which provides that all books, newspapers, or periodicals must be

18

purchased through special purchase orders.   There is no
showing that plaintiff presented the remaining claims concern-
ing his access to library facilities or to the seizure of
publications without proper notice through the administrative
grievance procedure.

**Count 17** (Doc. 1, p. 40a): Plaintiff alleges defendants
Cummings, McKune, Smith, and Thorne violated his First and
Fourteenth Amendments by implementing and enforcing a policy
banning publications containing nudity and sexually explicit
material.   He also claims defendants Cummings, McKune and
Smith "fail[ed] to enforce the no-nudity rule, and promot[ed]
homosexuality, and increas[ed] the risks of attacks...."
Finally, he asserts these three defendants "are having inmates
shower together, stripped search together in front of inmates
and staff, violating no nudity policy, promoting homosexual-
ity, and increasing risks of prison rape, all intentionally!"
(Doc. 1, p. 40a.)

     The record shows plaintiff presented this claim through
the grievance procedure.   The court, however, concludes
plaintiff's claim concerning the practice of having prisoners
shower together is mere invective and dismisses that portion
of Count 17.  Plaintiff's claim concerning the policy regard-

ing the content of publications received by prisoners, however, is not subject to summary dismissal on its merits.

On July 25, 2005, petitioner submitted an amended complaint adding seven claims.  Because the court has determined that the plaintiff's failure to exhaust every claim through the grievance procedure requires the dismissal of this action, the court does not discuss these claims in detail. Briefly summarized, these claims are:

**Count 1** (Doc. 7, p. 5): Plaintiff claims defendant Cummings violated his rights under the First Amendment by retaliation and conspiring to impose sanctions due to plaintiff's filing of complaints and grievances.

**Count 2** (Doc. 7, p. 5): Plaintiff claims defendant Cummings violated his rights under the First Amendment by a series of discriminatory acts, religious persecution, denial of equal rights, interference with religious freedom, and retaliatory sanctions and treatment.  The supporting grievance materials address plaintiff's claims concerning the variety of Kosher items available in the prison canteen, preparation of the Kosher diet, and access to monthly carry-out meals.

**Count 3** (Doc. 7, pp. 5-6): Plaintiff claims defendant Beck violated his rights under the First and Fourteenth Amendments

20

by harassment and retaliation for filing a grievance against her. **Count 4** (Doc. 7, p. 6): Plaintiff alleges defendant McKune has violated his rights under the First Amendment by harassment, retaliation, and illegal seizure of his mail without notice of censorship.

**Count 5** (Doc. 7, p. 6): Plaintiff alleges defendant Smith violated his rights under the First and Fourteenth Amendments by the unlawful seizure of legal mail and the denial of use of plaintiff's legal name.

**Count 6** (Doc. 7, p. 7): Plaintiff alleges defendant Thorne violated his rights under the First and Fourteenth Amendments by unlawful seizures of mail, unlawful opening of legal mail, the return of outgoing mail, and the refusal to mail materials.

**Count 7** (Doc. 7, p. 7): Plaintiff alleges defendant Thorne violated his rights under the First Amendment by seizing his newspaper order without notice, an opportunity to appeal, or to dispose of the newspaper.

**Count 8** (Doc. 7, p. 7): Plaintiff alleges defendants Dorian and LaRocco violated his rights by ongoing religious discrimination, religious persecution, and disparity in treatment of

the Kosher diet.

**Count 9** (Doc. 7, p. 7): Plaintiff alleges defendant Dorian violated his rights by serving spoiled foods, and by failing to provide adequate fresh produce.

**Count 10** (Doc. 7, p. 8): Plaintiff alleges defendant McKune violated his rights under the First and Fourteenth Amendments by enforcing a ban on nudity in magazines and correspondence received by prisoners while continue to require prisoners to shower together.  He also claims defendant McKune failed to adequately define nudity, leaving mailroom staff excessive latitude in censoring materials.

**Count 11** (Doc. 7, p. 8): Plaintiff alleges defendants McKune, Cummings, and Thorne violated his rights under the First and Fourteenth Amendments by conspiring to harass and retaliate against him, by opening legal mail outside his presence, and by returning letters of complaint from plaintiff's outgoing mail.

### Conclusion

Because Counts 6, 7, 10, 11, and 16 of the original complaint contain unexhausted claims, this matter is subject to dismissal under Ross v. County of Bernalillo, 365 F.3d at 1189-90.  Such a dismissal ordinarily is without prejudice.

22

Id.

However, because some claims are subject to dismissal on their face, the court dismisses the claims identified in Counts 1, 2, 3, 4, and 8 with prejudice pursuant to 42 U.S.C. 1997e(c)(2).

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed without prejudice, except as provided below, due to plaintiff's failure to present every claim through the administrative grievance procedure.

IT IS FURTHER ORDERED the court dismisses with prejudice, pursuant to 42 U.S.C. 1997e(c)(2), the claims in the original complaint identified as Counts 1, 2, 3,4, and 8 for the reasons set forth in this order.

IT IS FURTHER ORDERED plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is denied as moot.

IT IS FURTHER ORDERED plaintiff's motions for service (Docs. 3 and 9) are denied.

IT IS FURTHER ORDERED plaintiff's motion for prohibitory injunction (Doc. 5) is denied.

IT IS FURTHER ORDERED plaintiff's motion for recusal (Doc. 10) is denied.

A copy of this order shall be transmitted to the plain-

tiff.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 8th day of September, 2005.



S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge